FILED
CLERK, U.S. DISTRICT COURT
9/9/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER DE SANTIAGO-PEREZ,<br><br>               Petitioner,<br><br>     v.<br><br>WILLIAM BARR, Attorney General, et al.,<br><br>               Respondents. | Case No. CV 17-3790-CJC (JPR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |

    The Court has reviewed the records on file and Report and Recommendation of U.S. Magistrate Judge, which recommends that Respondents' summary-judgment motion be granted. See 28 U.S.C. § 636(b)(1). On August 13, 2020, Petitioner filed objections to the R. & R.; on August 27, Respondents filed a response.

    Petitioner claims that the Magistrate Judge "stepped outside [her] prescribed role" by weighing the evidence and concluding herself that he did not prove his derivative-citizenship claim by substantial credible evidence "rather than finding that no reasonable factfinder could come to th[at] conclusion." (Objs. at 1.) But the Magistrate Judge applied the correct summary-judgment standard (see R. & R. at 3 (noting that court must grant

summary judgment when no genuine dispute exists as to any material fact and that dispute is genuine only if based on it "a reasonable jury could find for the nonmoving party")), and she did not make any credibility determinations or factual findings (see Objs. at 6-8). Rather, she thoroughly reviewed the record, making all reasonable inferences in his favor, to determine whether a reasonable factfinder could find based on substantial credible evidence that Petitioner's U.S.-citizen father was in the United States for the period required by 8 U.S.C. § 1401(a)(7) (1965) (recodified in 1978 as § 1401(g)). (See generally R. & R. at 9-19.)

As the Magistrate Judge found, Petitioner failed to produce substantial credible evidence that his father, Cesario de Santiago, was present in the United States for the necessary five years between Cesario's 14th birthday, on December 9, 1942, and Petitioner's birth, on September 13, 1965. (See R. & R. at 13-19.) Petitioner claims the Magistrate Judge improperly "declined to credit testimony . . . that Cesario went to the United States 'seven or eight times'" on bracero trips that lasted as long as three months. (Objs. at 2; see id. at 4, 9-11, & n.1.) But as she correctly recognized, "even if Petitioner's calculation that Cesario spent a total of three years working as a bracero in the United States is credited, he can't establish that Cesario spent two additional years here before Petitioner was born." (R. & R. at 16.)

Petitioner originally argued that Cesario was physically present in the United States for an additional 32 months between January 1, 1963, and September 13, 1965, when he commuted to work

2

from Tijuana to California. (See Objs. at 11-13.) But his original calculation to that effect erroneously included weekends even though Antonia Suarez, Petitioner's sister and the only source of information on this topic, unequivocally testified that Cesario stayed in Mexico on Saturdays and Sundays. (See Mot. Summ. J., Ex. 29 at 78, 80, 84, 89, 91, 96.) He now concedes that even assuming Cesario worked every single weekday during that time, he would be 23 days shy of the two years needed. (See Objs. at 2.) Although she accepted it (see R. & R. at 17), the Magistrate Judge correctly pointed out that even that calculation is overly "generous" because it credits Cesario with being physically present in the United States for 24 hours each day he worked despite Suarez's undisputed testimony that he returned to Tijuana each night after work (see id. (citing Mot. Summ. J., Ex. 29 at 89, 91, 96 & Lomeli v. Holder, No. CV-11-02340-PHX-NVW., 2013 WL 2152244, at *2 (D. Ariz, May 17, 2013) (counting hours claimant was physically present in United States, not days)).[1]

Petitioner argues that a genuine issue of material fact exists as to whether Cesario was physically present here for those 23 additional days and that the Magistrate Judge erroneously "declined to infer that Cesario spent . . . weekends in the United States from 1963 to [September 13,] 1965," from evidence that he had "as many as two residences in the United States . . . in the early-mid 1960s." (Objs. at 2.) But

---

[1] Thus, although Petitioner maintains throughout his objections that the Magistrate Judge improperly refused to infer that he spent "nights" in the United States during the 1963 to 1965 period (see Objs. at 11, 12, & 13), she in fact did make that inference in his favor despite its likely being unwarranted.

contrary to his assertion otherwise, there is no "documentary and testimonial evidence that suggests Cesario spent nights and weekends in the United States" during the relevant period. (Id. at 11.) For instance, he claims that his 1962 temporary Social Security card established that he had a residence in West Los Angeles. (Id. at 12.) But as the Magistrate Judge pointed out, that card was valid for only two weeks in early 1962 and therefore was not evidence of any U.S. address between 1963 and 1965. (R. & R. at 18.) Moreover, Suarez testified that she didn't know if Cesario had ever actually lived at the address listed on that card. (See Mot. Summ. J., Ex. 29 at 75-76.) Finally, that Cesario may have lived at some address in the United States for a brief period in 1962 would not be surprising because the parties do not dispute that he lived and worked here as a bracero during that period. Even Petitioner does not claim that his father worked as a bracero in 1963. Thus, the 1962 address is not evidence at all of a 1963 residence, much less substantial credible evidence.

For the first time, Petitioner identifies another potential address where Cesario might have spent weekends and nights during the relevant time period — a home he allegedly rented in Huntington Beach. (See Objs. at 12.) He appears to be referring to a statement by Suarez in her declaration that when she and her mother and sister immigrated to the United States on November 14, 1966 — more than a year after the relevant period had ended — Cesario was living and working in Huntington Beach and had "rented a house there" for them to live in. (Opp'n, Ex. A ¶ 4; see id. ¶ 9.) Notably, Suarez testified at her deposition that

4

the house Cesario had rented was actually in San Isidro, not Huntington Beach.  (See Mot. Summ. J., Ex. 29 at 82.) Regardless, she expressly testified that her family rented it "right after [they] immigrated" in November 1966 so that they could "live there" while they "wait[ed] for . . . green card[s]." (Id.)[2]  This is consistent with her statement in the declaration that "[f]rom 1963 until November 14, 1966, my father drove from Tijuana, Mexico, to Huntington Beach, California every weekday to work."  (Opp'n, Ex. A ¶ 9.)  Thus, at best the evidence shows that Cesario had a place to spend nights and weekends in November 1966, more than a year after Petitioner was born, and does not support any reasonable inference about his physical presence in the United States between 1963 and September 1965.

Having reviewed de novo those portions of the R. & R. to which Petitioner objects, the Court agrees with and accepts the findings and recommendations of the Magistrate Judge.  IT THEREFORE IS ORDERED that Respondents' summary-judgment motion is granted, their motion concerning the use of deposition testimony at an evidentiary hearing is denied as moot, and judgment be entered in Respondents' favor.

---

[2] Petitioner argues that Suarez's deposition testimony also showed that around that time Cesario began living in the United States and would "come down" to Tijuana to give the family money. (Objs. at 12.)  But that was not her testimony.  Rather, she explained that "during the time [they] were waiting for [their] green card[s]" — which was after they had already moved to the United States — Cesario would "come down to where [they] were" from Huntington Beach.  (Mot. Summ. J., Ex. 29 at 83; see id. at 82.)

5

1  The Clerk is directed to serve this order and the judgment
2  on the Ninth Circuit Court of Appeals.

4  DATED: September 9, 2020

                                  CORMAC J. CARNEY
                                  U.S. DISTRICT JUDGE